UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRUSTEES OF THE NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS PENSION FUND, WELFARE FUND, ANNUITY FUND, and APPRENTICESHIP, JOURNEYMAN RETRAINING, EDUCATIONAL AND INDUSTRY FUND, TRUSTEES OF THE NEW YORK CITY CARPENTERS RELIEF AND CHARITY FUND, THE NEW YORK CITY AND VICINITY CARPENTERS LABOR-MANAGEMENT CORPORATION, and the NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS,<br><br>　　　　　　　　　　　　　　　　Petitioners,<br><br>-against-<br><br>VOLMAR CONSTRUCTION INC.,<br><br>　　　　　　　　　　　　　　　　Respondent. | 16 CV _____<br><br>**PETITION TO CONFIRM AN ARBITRATION AWARD** |

　　　　Petitioners, Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund, Trustees of the New York City Carpenters Relief and Charity Fund, the New York City and Vicinity Carpenters Labor Management Corporation, and the New York City District Council of Carpenters ("Petitioners" and/or the "Funds"), by and through their attorneys, Virginia & Ambinder, LLP, as and for their Petition to Confirm an Arbitration Award, respectfully allege as follows:

**NATURE OF THE ACTION**

　　　　1.　　This is an action under section 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1132(a)(3); section 301 of the Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 185; and/or section 9 of the Federal Arbitration Act, 9 U.S.C § 9, to confirm and enforce an arbitrator's Award rendered

pursuant to a collective bargaining agreement between the New York City District Council of Carpenters f/k/a District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America ("Union") and Volmar Construction Inc. ("Respondent").

## JURISDICTION AND VENUE

2.   This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. §§ 185 and 1132(e)(1).

3.   Venue is proper in this Court pursuant to 29 U.S.C. § 1132(e)(2) because the ERISA Funds (as defined below) are administered in this district.

## THE PARTIES

4.   Petitioners Trustees of the New York City District Council of Carpenters Pension, Welfare, Annuity, Apprenticeship, Journeyman Retraining and Educational and Industry Funds (the "ERISA Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with ERISA.  The Trustees are fiduciaries of the ERISA Funds within the meaning of section 3(21) of ERISA, 29 U.S.C. § 1002(21).  The ERISA Funds maintain their principal place of business at 395 Hudson Street, New York, New York 10014.

5.   Petitioners Trustees of the New York City District Council of Carpenters Relief and Charity Fund (the "Charity Fund") are Trustees of a charitable organization established under section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3).  The Charity Fund maintains its principal place of business at 395 Hudson Street, New York, New York 10014.

6.   Petitioner Union is a labor organization that represents employees in an industry affecting commerce within the meaning of section 501 of the LMRA, 29 U.S.C. § 142, and is the certified bargaining representative for certain employees of the Respondent.

-2-

7. Petitioner New York City and Vicinity Carpenters Labor-Management Corporation is a New York not-for-profit corporation.

8. Respondent is a corporation incorporated under the laws of the State of New York. At relevant times, Respondent was an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), and was an employer in an industry affecting commerce within the meaning of section 501 of the LMRA, 29 U.S.C. § 142. Respondent maintains its principal place of business at 4400 2nd Avenue, Brooklyn, NY, 11232-4213.

## THE SCA's PROJECT LABOR AGREEMENT

9. The New York City School Construction Authority ("SCA")'s Project Labor Agreement ("PLA") sets forth the rules and guidelines governing projects performed for the SCA. A copy of the PLA is attached hereto as **Exhibit A**.

10. Whenever contractors and subcontractors perform work covered by the PLA—also known as "Program Work"—they are required to sign an Affidavit of Project Labor Agreement ("PLA Affidavit") stating that they agree to be bound by the PLA. Exhibit A, Article 2, Sections 3, 6; *id.*, Article 20.

11. Any employers performing Program Work are required to "pay timely contributions on behalf of all employees covered by the [PLA] to those established jointly trusteed employer benefit funds designated in Schedule A [of the PLA] . . . ." Exhibit A, Article 11, Section 2.

12. Such employees are also bound by the terms of the applicable collective bargaining agreement. Exhibit A, Article 2, Section 4.

13. The agreement between the Building Contractors Association, Inc. and the District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of

America, AFL-CIO (the "CBA") is one of the collective bargaining agreements referenced in the PLA's Schedule A. A copy of the PLA's Schedule A, which was obtained from an archived version of the SCA's website on May 24, 2016, is attached hereto as **Exhibit B**. A copy of the CBA is attached hereto as **Exhibit C**.

## THE APPLICABLE CBA

14. At all relevant times, Respondent was a signatory to a PLA Affidavit with regard to the work it performed at the Mott Hall School located at 71-111 Convent Ave., New York, NY 10027. A copy of the Funds' record of this PLA Affidavit is attached hereto as **Exhibit D**. *See also* Declaration of Brian Spencer ("Spencer Decl."), at ¶¶ 1-6.

15. As a signatory to the PLA, Respondent was bound to the CBA's terms for the work it performed within the scope and geographical jurisdiction of the Union ("Covered Work"). Exhibit A, Article 2, Section 4.

16. As set forth in the CBA, Respondent was required to remit certain contributions to the Funds when it performed Covered Work. Exhibit C, Article XVI, Section 1.

17. Additionally, Respondent was required to submit to an audit of its books and records by the Funds to ensure its compliance with its contributions obligations. Exhibit C, Article XVI, Section 1.

18. The CBA provides that:

> In the event that formal proceedings are instituted before a court of competent jurisdiction by the trustees of a Benefit Fund or Funds to collect delinquent contributions to such Fund(s), and if such court renders a judgment in favor of such Fund(s), the Employer shall pay to such Fund(s), in accordance with the judgment of the court, and in lieu of any other liquidated damages, costs, attorney's fees and/or interest, the following:
>
> (1) the unpaid contributions; plus

-4-

>   (2) interest on the unpaid contributions determined at the prime rate of Citibank plus 2%; plus
>   (3) an amount equal to the greater of --
>     (a) the amount of the interest charges on the unpaid contributions as determined in above, or
>     (b) liquidated damages of 20% of the amount of the unpaid contributions; plus
>   (4) reasonable attorney's fees and costs of the action; and
>   (5) such other legal or equitable relief as the court deems appropriate.

Exhibit C, Article XV, Section 6(a).

19. The CBA further provides that employers such as Respondent are bound by the Funds' Trust Agreements and Collection Policies. Exhibit C, Article XVI, Section 3.

20. The Trustees of the Funds established a Revised Statement of Policy for Collection of Employer Contributions (the "Collection Policy"). A copy of the Collection Policy is attached hereto as **Exhibit E**.

21. The Collection Policy provides that:

> In the event that an employer refuses to permit a payroll review and/or audit upon request by the Fund Office or the Outside Accounting Firms, or if the employer refuses the Outside Accounting Firms access to pertinent records, the Outside Accounting Firms shall inform the Fund Office. The Fund Office shall notify the District Council of the employer's lack of cooperation. Except as otherwise provided in this Policy, the Fund Office shall determine the estimated amount of the employer's delinquent contributions based on the assumption that the employer's weekly hours subject to contributions for each week of the requested audit period are the highest number of average hours reported per week for any period of four consecutive weeks during the audit period.

Exhibit E, Section IV(12).

22. A dispute arose between the Funds and Respondent when Respondent failed to submit to an audit. Accordingly, the Funds initiated arbitration pursuant to the CBA's arbitration clause. *See* Exhibit C, Article XVI, Section 7 ("Should any dispute or disagreement arise between

the parties hereto . . . either party may seek arbitration of the dispute before the impartial arbitrator designated hereunder . . . .").

23. The Funds noticed said arbitration by having a Notice of Hearing sent by regular and certified mail to Respondent's last known address. A copy of the Notice of Hearing is annexed hereto as **Exhibit F**.

24. Thereafter, the arbitrator held a hearing and rendered his award, in writing, dated September 5, 2015, determining said dispute (the "Award"). A copy of the Award is attached hereto as **Exhibit G**.

25. The arbitrator found that Respondent violated the CBA when it failed to furnish proper records when requested by the Funds, and ordered Respondent to pay the Funds the sum of $76,217.34, consisting of a principal sum of delinquent contributions of $55,130.58, total interest of $7,660.64, liquidated damages of $11,026.12, court costs of $400.00, attorneys' fees of $1,500.00, and the arbitrator's fee of $500.00. Exhibit G.

26. The arbitrator also found that interest of 5.25% will accrue on the aggregate amount of the Award from the date of the issuance of the Award. Exhibit G.

27. As of the date of this Petition, Respondent has failed to pay any portion of the Award.

28. The Award has not been vacated or modified and no application for such relief is currently pending.

29. Petitioners are entitled to the reasonable attorneys' fees and costs expended in this matter pursuant to both Article XV, Section 6(a) of the CBA and Section 502(g) of ERISA, 29 U.S.C. § 1132(g).

30.     The Collection Policy further states that "[a]ttorneys' fees shall be assessed against a delinquent employer, at the same hourly rate charged to the Funds for such services . . . for all time spend by Collection Counsel in collection efforts . . . ." Exhibit E, Section V(6).

31.     Copies of V&A's contemporaneous time records, reflecting all time spent and all activities performed in the prosecution of this matter by its attorneys and staff, are annexed hereto as **Exhibit H**.

32.     I, Todd Dickerson ("TD" in the accompanying billing records), am a 2013 graduate of the University of Illinois College of Law.  In November 2015, I joined V&A as an associate.  In late May of 2016, I was promoted to the position of "Of Counsel."  I have regularly served as lead counsel for multiemployer employee benefit plans in ERISA litigation since joining V&A.  Before joining V&A, I regularly served as lead counsel in labor and employment lawsuits in both state and federal court.  V&A billed my time at a rate of $225 per hour during my time as an associate.  During my time as "Of Counsel," V&A billed my time at a rate of $300 per hour. *See* Exhibit H.

33.     Thomas Horgan ("TH" in the accompanying billing records), is a 2015 graduate of Creighton University School of Law and was an associate at V&A. His primary practice area is representation of multiemployer employee benefit plans in ERISA litigation.  V&A billed his time at a rate of $225 per hour for work performed in connection with this matter. *See* Exhibit H.

34.     V&A billed their legal assistants' time at a rate of $100 per hour for work performed in connection with this action. *See* Exhibit H.

35.     All of the above-referenced rates are the result of negotiations between V&A and the Funds regarding the proper hourly rates to compensate V&A's attorneys and legal assistants for their services.

36. V&A's total billings in this matter amount to $4,755 reflecting 19.9 hours of work. *See* Exhibit H.

37. In addition, V&A will advance $70 in service fees in connection with this matter.

38. A Proposed Judgment is attached hereto as Exhibit I**.**

**WHEREFORE,** Petitioners respectfully request that this Court:

(1) Confirm the Award in all respects;

(2) Award judgment in favor of the Petitioners and against Respondent in the amount of $76,217.34, with interest to accrue at the rate of 5.25% from the date of the Award, pursuant to the Arbitrator's Award;

(3) Award judgment in favor of the Petitioners and against Respondent in the amount of $4,755 in attorneys' fees and $70.00 in costs arising out of this petition;

(4) Award post-judgment interest at the statutory rate; and

(5) Award Petitioners such other and further relief as is just and proper.

Dated: New York, New York  
       August 17, 2016

Respectfully submitted,

**VIRGINIA & AMBINDER, LLP**

By:     /s/  
Todd Dickerson, Esq.  
40 Broad Street, 7th Floor  
New York, New York 10004  
Telephone: (212) 943-9080  
Fax: (212) 943-9082  
*Attorneys for Petitioners*